Stephen Q. Wood (Utah Bar No. 12403)
stephenwood@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
2755 East Cottonwood Parkway, Suite 520
Salt Lake City, Utah 84121
Tel:    (801) 515-7300
Fax:    (801) 515-7400

Jonathan E. Pickhardt (*pro hac vice* forthcoming)
jonpickhardt@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel:    (212) 849-7000
Fax:    (212) 849-7100

Todd M. Briggs (*pro hac vice* forthcoming)
toddbriggs@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Tel:    (650) 801-5000
Fax:    (650) 801-5100

Christopher R. Sabbagh (*pro hac vice* forthcoming)
chrissabbagh@quinnemaneul.com
Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Tel:    (713) 221-7000
Fax:    (713) 221-7200

*Attorneys for Plaintiff*
*Secure Authentication Technologies LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| SECURE AUTHENTICATION TECHNOLOGIES LLC,<br><br>                 Plaintiff,<br><br>v.<br><br>PLAID INC.,<br><br>                 Defendant. | **COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>**Case No. 2:25-cv-00514** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Secure Authentication Technologies LLC, for its complaint against Defendant Plaid Inc., requests a trial by jury, damages, and other relief, and alleges as follows upon actual knowledge with respect to itself and its own acts and on information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This is an action for patent infringement.  Secure Authentication Technologies alleges that Plaid infringes U.S. Patent No. 11,315,090 ("the '090 patent"), attached as **Exhibit A**, under 35 U.S.C. §§ 271 and 281, *et seq*.

2.      Secure Authentication Technologies alleges that Plaid directly and indirectly infringes the '090 patent by making, using, offering for sale, selling, and/or importing the Accused Products described below.  Secure Authentication Technologies further alleges that Plaid induces the infringement of other third parties through their use of the Accused Products as directed by Plaid.  Secure Authentication Technologies seeks damages and other relief for Plaid's infringement of the '090 patent.

## THE PARTIES

3.      Secure Authentication Technologies LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 3500 S Dupont Hwy, Dover, DE 19901.  Secure Authentication Technologies is the assignee and current owner of the '090 patent.

4.      On information and belief, Plaid is a corporation organized under the laws of Delaware with its principal place of business at 1098 Harrison Street, San Francisco, CA 94103. Plaid has appointed Corporation Service Company at 251 Little Falls Drive, Wilmington, DE 19808 as its agent for service of process in Delaware.  On information and belief, Plaid is also

registered to do business in the state of Utah, where Plaid lists its California address for service: 1098 Harrison Street, San Francisco, CA 94103.

5.      On information and belief, Plaid maintains a regular and established place of business and does business in Utah at its facility at 136 Main Street, Salt Lake City, Utah 84101. According to a July 16, 2021 blog post on Plaid's website, engineers at the Salt Lake City office develop technology that Plaid uses to link users' financial accounts and handle authentication requests.  *See generally* **Exhibit C** at 5, available at https://plaid.com/blog/three-years-of-salt-lake-city/ (last accessed June 16, 2025).

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States of America, 35 U.S.C. §§ 1, *et seq*.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Plaid due, *inter alia*, to its continuous presence in, and systematic contact with, this judicial district and its registration in Utah and domicile in this district, through which Plaid has purposefully availed itself of the privilege of conducting activities within this State.  Either directly or through subsidiaries or intermediaries (including distributors, retailers, and others), Plaid has committed and continues to commit acts of infringement in this judicial district by, among other things, making, using, importing, offering for sale, and/or selling products and/or services that infringe the '090 patent.

8.      Venue is proper in the District of Utah under 28 U.S.C. §§ 1391(b) and 1400(b) because Plaid has a regular and established physical place of business in this District and has committed acts of patent infringement in this District, including at the Plaid office located at 136 Main Street, Salt Lake City, Utah 84101.

**Figure 1: Plaid Office at 136 Main Street, Salt Lake City, Utah 84101**

9.       This office is a regular, physical, continuous, and established place of business of

Plaid, which Plaid has established, ratified, and controlled; Plaid has listed this office on its website

as a place of business of Plaid; Plaid has employed numerous employees to conduct its business

in and from this District; and Plaid has infringed the '090 patent in this District.  For example,

Plaid is "rethink[ing] data access and how best to partner with financial institutions to move

towards open authentication standards and to make consumer-permissioned data a lot more

accessible for everyone," and "adapting [Plaid's] internal systems to do that at scale has brought a

bunch of new engineering challenges to SLC."  Ex. C at 5.



**Figure 2: "Our office located in the heart of SLC"**

Ex. C at 5.

      10.    Additionally, Plaid's LinkedIn page lists Salt Lake City as a corporate location, (**Exhibit D** at 2, available at https://www.linkedin.com/company/plaid-/ (last accessed June 16, 2025)), the webpage for Hines Property Management lists Plaid as one of its "major tenants" in "downtown Salt Lake City" (**Exhibit E** at 1-2, available at https://www.hines.com/properties/the-kearns-building-salt-lake-city (last accessed June 16, 2025)), and Plaid currently employs many people in Salt Lake City, including various software engineers who work on Plaid's financial products (*e.g.*, **Exhibits F1-F8**).

## BACKGROUND

### A.    The '090 Patent

11.    The '090 patent is a foundational innovation that enables cutting-edge advancements in financial technology.  The '090 patent is titled "System and Method for Automated Optimization of Financial Assets."  The '090 patent was filed on April 16, 2020 as Application No. 16/850,150 and was duly and lawfully issued on April 26, 2022.  The '090 patent is a continuation of Application No. 15/678,453, filed on August 16, 2017.  Application No. 15/678,453 claims priority to Application No. 14/606,931, filed on January 27, 2015.  And Application No. 14/606,931 further claims priority to Provisional Application No. 61/932,495, filed on January 28, 2014.  Secure Authentication Technologies owns all right, title, and interest in the '090 patent.  A true and correct copy of the '090 patent is attached as **Exhibit A**.

12.    The '090 patent relates to technology that enables a third-party to gain secure access to online accounts that are otherwise protected by a multi-factor authentication protocol (Claim 1), and then enables such access on an ongoing basis regardless of whether the account holder is present (Claim 2).  At the time of the invention, some financial institutions—and even more, now—would require "multi-level or multi-factor authentication protocols" to access an account. *See* Ex. A at 17:64-18:6.  For example, during a login process, a bank might have prompted an individual to input an authentication code that the bank sent to the account holder via text message or e-mail before allowing the individual to access the requested bank account.  *Id.* at 18:7-23. Although multi-factor authentication promoted account security, it also prevented the applicant's financial management system from freely accessing its users' accounts to retrieve and display current balance information which was necessary to re-distribute and optimize the users' financial assets.  In order for the system to work on an ongoing basis, the user would need to provide an authentication code every time the financial management system accessed any of the user's

accounts that were protected by multi-factor authentication.  This unsolved technological problem prevented the development and operation of innovative financial management systems.  *See id.* at 1:33-3:6.

13.    The applicant therefore invented the following technological solution to this technological problem:  "with respect to multi-factor authentication, the financial management network implements unique and inventive concepts that permit it to act as proxy for the user" and optionally "respond to any multi-factor authentication that may be required for account access in a way that does not require user intervention, while simultaneously maintaining rigid security measures to avoid unauthorized access to the user's accounts by other parties."  *Id.* at 18:53-60 (citation omitted); *see also id.* at 18:24-52 (explaining that the product program may be configured to act as a "proxy for the user . . . to receive and/or interpret . . . unique authentication codes").  Specifically, "[w]hen a user first links an account to the financial management network, the user supplies their username and password to the financial management network, and a process within the financial management network" attempts to log in to the user's account.  *Id.* at 19:29-34 (citations omitted).  "If the bank responds to the log in attempt by issuing challenge questions or by requiring additional multi-factor authentication such as entry of a code sent to the user, then the financial management network will prompt the user for the additional information that the bank website has requested."  *Id.* at 19:35-40 (citation omitted). One embodiment of this technological solution is disclosed in claim 1 of the '090 patent:

> 1. A method for permitting a third-party entity to gain access, in a secure manner, to an online account held by an account holder that is secured by a multi-factor authentication protocol, comprising the following steps performed by the third-party entity:
>
> > collecting the account holder's credentials;
> >
> > encrypting the account holder's credentials using one or more processors;

> storing the account holder's encrypted credentials using one or more processors, wherein the encrypted credentials are stored in a data store;
>
> verifying the account holder's credentials by accessing, via one or more processors, the online account using the account holder's credentials;
>
> receiving a multi-factor authentication request from the online account, the multi-factor authentication request indicating that a response is required from the account holder before further access to the online account is granted;
>
> prompting the account holder for a response and receiving the response thereto from the account holder; and
>
> transmitting the account holder's response to the online account to satisfy the multi-factor authentication request.

*Id.* at 30:61-31:18.

14.     Once the financial management network has access to the bank, it optionally "adds to the user data stored by the site an additional multi-factor authentication endpoint, e.g., an additional phone number or email address" to facilitate any subsequent multi-factor authentication requests.  *Id.* at 19:60-67 (citation omitted).  One embodiment of this technological solution is disclosed in claim 2 of the '090 patent:

> 2. The method of claim **1**, further comprising the steps of:
>
> storing one or more of the account holder's endpoints for the online account in a data store associated with the online account; and
>
> utilizing said one or more endpoints to permit the third-party to gain access to the online account, or information pertaining to the online account, without requiring a response by the account holder to any subsequent multi-factor authentication requests.

*Id.* at 31:19-27.

15.     The patent examiner assigned to evaluate the application leading to the '090 patent initially asserted that the claims were directed to ineligible subject matter under 35 U.S.C. § 101.

*See* **Exhibit B** at 96–105.[1]  The applicant explained that the claims were eligible under § 101, asserting that "[t]his solution, disclosed by Applicant's claimed methods, can only be implemented using specialized computer hardware."  *Id.* at 29.  For example, "a human call center could not serve this function, for no savvy bank customer would ever provide their unencrypted username/password combination necessary to access their bank account to another untrusted human – in fact, doing so would violate the agreement that exists between a bank and its customers"; "specialized computer systems are required to implement 256-bit bank-level encryption to protect these login credentials, which is the only known safe and trusted way to transmit and store such credentials"; and "specialized computer hardware is necessary to power the headless browsers that are able to use logic to interpret bank websites and interact with their various messages, prompts, data input boxes, and action buttons."  *Id.*  In short, the claims disclosed patentable subject matter because they "leverag[e] specialized computer hardware and software, computer logic, and encryption, to overcome a method of security that was intended to be impenetrable."  *Id.* at 30.

16.     The applicant further explained that—to the extent the examiner maintained that the claims are abstract—"the pending claims nonetheless are patent eligible as having significantly more than an abstract idea" by "recit[ing] the use of an encrypted process that helps individual investors manage, in a secure way, a multitude of bank accounts through a single interface."  *Id.* at 31-32.  The examiner ultimately reversed his initial determination and concluded that the claims do "qualify as patent eligible subject matter."  *See id.* at 9–10.

---

[1]  Exhibit B contains relevant portions of the prosecution history for the '090 patent.

**B.      Plaid's Use of the Patented Technology**

17.      On information and belief, Plaid makes, uses, sells, and/or offers to sell in the United States, and/or imports into the United States software that practice one or more claims of the '090 patent, including Link and Auth (collectively, "Accused Products").  For example, Plaid makes, uses, and sells a product called "Link" that enables users to "securely connect[]" their "financial accounts."  *See* **Exhibit G** at 1, available at https://plaid.com/plaid-link/ (last accessed June 16, 2025).  "Plaid Link," as explained by Plaid, "handles all aspects of the login and authentication experience, including credential validation, multi-factor authentication, error handling, and sending account linking confirmation emails."  **Exhibit H** at 1, available at https://plaid.com/docs/link/ (last accessed June 16, 2025).

18.      Plaid also makes, uses, and sells a product called "Auth" that interworks with Link to "[i]nstantly verify any bank account, anywhere . . . [f]or faster and easier account funding, pay by bank, loan repayments, and everything in between."  **Exhibit I** at 1, available at https://plaid.com/products/auth/ (last accessed June 16, 2025).  Plaid's documentation for Auth explains how to handle authentication requests, which includes "prompt[ing] the user in Plaid Link to fill in the [one time passcode] and wait[ing] for them to fill it in."  **Exhibit J** at 10, available at https://plaid.com/plaid-exchange/docs/authentication/ (last accessed June 16, 2025).  As alleged below, the Accused Products implement the same technological solution claimed by the '090 patent.

## <u>COUNT I</u>
## <u>(Infringement of U.S. Patent No. 11,315,090)</u>

19.      Secure Authentication Technologies incorporates by reference each and every allegation contained in the paragraphs above as though fully set forth herein.

20.      Plaid makes, uses, sells, offers to sell in the United States, and/or imports into the

United States products that directly infringe the '090 patent, including the above identified Accused Products. The Accused Products infringe at least claims 1 and 2 of the '090 patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a).

21. As a non-limiting example, below is an exemplary infringement claim chart for claims 1 and 2 of the '090 patent, showing how the Accused Products infringe each and every element of at least this claim. This claim chart is based on publicly available information, and Secure Authentication Technologies reserves the right to modify this chart, for example, based on information obtained in discovery.

| Claim 1 | |
|---|---|
| **'090 Patent** | **Accused Products** |
| [1pre] A method for permitting a third-party entity to gain access, in a secure manner, to an online account held by an account holder that is secured by a multi-factor authentication protocol, comprising the following steps performed by the third-party entity: | To the extent the preamble is limiting, Plaid's Link and Auth products implement a method for permitting a third-party entity (*e.g.*, Plaid and ultimately Plaid's customers) to gain access, in a secure manner, to an online account held by an account holder (*e.g.*, a user's financial account) that is secured by a multi-factor authentication protocol. |
| | For example, Link enables a Plaid customer's users to "securely connect[]" their "financial accounts" to the Plaid customer's "app or service," thereby permitting the Plaid customer to gain access to an online account held by a user. Ex. G at 1. Thus, Link further ensures that the Plaid customer can gain access to users' accounts in a secure manner. |
| | "Plaid Link handles all aspects of the login and authentication experience, including credential validation, multi-factor authentication, error handling, and sending account linking confirmation emails." Ex. H at 1. Link therefore enables the Plaid customer to gain access to accounts secured by a multi-factor authentication protocol. |
| | Link implements the claims by operating in concert with related products, including at least Plaid's Auth product. Auth is used to "[i]nstantly verify any bank account" and "[m]ake it easy for [users] to verify account ownership and share bank account information from over 12,000 financial institutions in the U.S., Canada, and Europe." Ex. I at 1, 3. Auth provides endpoints "for |

| | |
|---|---|
| | basic as well as multi-factor authentication" and supports several authentication protocols.  Ex. J at 7.<br><br>Thus, Plaid infringes the preamble to the extent it is limiting. |
| [1a] collecting the account holder's credentials; | The Accused Products collect the account holder's credentials (*e.g.*, log in information for the user's financial account).<br><br>The Accused Products prompt users to enter their account credentials:<br><br><br><br>Ex. G at 2.<br><br>Thus, Plaid infringes limitation [1a]. |

| | |
|---|---|
| [1b] encrypting the account holder's credentials using one or more processors; | The Accused Products also encrypt the account holder's credentials using one or more processors.<br><br>The Accused Products enable users to "securely connect" their "financial accounts" to Plaid customer's "app or service."  Ex. G at 1.  As noted on Plaid's website: "When you use Plaid to connect an account to an app, we help keep your data safe and private with best-in-class encryption protocols like the Advanced Encryption Standard (AES 256) and Transport Layer Security (TLS)."<br><br> **Encryption safeguards your data while using Plaid**<br><br>When you use Plaid to connect an account to an app, we help keep your data safe and private with best-in-class encryption protocols like the Advanced Encryption Standard (AES 256) and Transport Layer Security (TLS).<br><br>**Exhibit K** at 3, available at https://plaid.com/safety/ (last accessed June 16, 2025).<br><br>Thus, Plaid infringes limitation [1b]. |
| [1c] storing the account holder's encrypted credentials using one or more processors, wherein the encrypted credentials are stored in a data store; | The Accused products store the account holder's encrypted credentials using one or more processors, wherein the encrypted credentials are stored in a data store.<br><br>Plaid states that, to link a financial account, it "collect[s] the data to power the services [the user has] chosen and, when requested, securely share it with the app [the user is] using and establish a secure connection that [the user] control[s]." |

<table>
<tr><td></td><td>

1   To link a financial account, first verify your ownership of the account by using your username and password. We will provide upfront clear information on the financial accounts being shared, so you can make the right choice for you.



2   Once ownership of your accounts is verified, we securely retrieve your permissioned account information from your financial institution.

3   We collect the data to power the services you've chosen and, when requested, securely share it with the app you're using and establish a secure connection that you control.

**Exhibit L** at 1, available at https://plaid.com/how-we-handle-data/ (last accessed June 16, 2025).

Thus, Plaid infringes limitation [1e].

</td></tr>
</table>

| | |
|---|---|
| [1d] verifying the account holder's credentials by accessing, via one or more processors, the online account using the account holder's credentials; | The Accused Products verify the account holder's credentials by accessing, via one or more processors, the online account using the account holder's credentials.<br><br>For example, Link submits the users' account credentials and determines whether the log in attempt was successful: |

14



Ex. H at 1.

Auth is advertised as a product that "[i]nstantly verif[ies] any bank account, anywhere." Ex. I at 1. And Plaid explains on its website that, "[t]o link a financial account, first verify your ownership of the account by using your username and password."



1    To link a financial account, first verify your ownership of the account by using your username and password. We will provide upfront clear information on the financial accounts being shared, so you can make the right choice for you.

2    Once ownership of your accounts is verified, we securely retrieve your permissioned account information from your financial institution.

3    We collect the data to power the services you've chosen and, when requested, securely share it with the app you're using and establish a secure connection that you control.

| | |
|---|---|
| | Ex. L at 1.<br><br>Thus, Plaid infringes limitation [1d]. |
| [1e] receiving a multi-factor authentication request from the online account, the multi-factor authentication request indicating that a response is required from the account holder before further access to the online account is granted; | The Accused Products receive a multi-factor authentication request from the online account, prompting a multi-factor authentication request indicating that a response is required from the account holder before further access to the online account is granted.<br><br>"Plaid Link handles all aspects of the login and authentication experience, including credential validation, multi-factor authentication, error handling, and sending account linking confirmation emails." Ex. H at 1. Auth provides endpoints "for basic as well as multi-factor authentication" and supports several authentication protocols. Ex. J at 7.<br><br>This includes receiving a multi-factor authentication request and asking the user for a response:<br><br> |

| | |
|---|---|
| | Ex. I at 1.<br><br>For example, Plaid documentation walks through a scenario in which "Plaid receives the MfaOtpEscalationChallenge response (the most common scenario) from POST /users/auth_token." Ex. J at 10.<br><br>Thus, Plaid infringes limitation [1e]. |
| [1f] prompting the account holder for a response and receiving the response thereto from the account holder; and | The Accused Products prompt the account holder for a response and receive the response thereto from the account holder.<br><br>For example, Plaid asks the user to enter the multi-factor authentication code sent to the user's e-mail or phone:<br><br><br><br>Ex. I at 1. |

| | Further, Plaid documentation notes that, after receiving a multi-factor authentication request from the user's financial institution, Auth "[p]rompts the user in Plaid Link to select how they want their [one time password] sent, displaying the methods the partner indicates it supports in the MfaOtpEscalationChallenge response. For example, voice or sms." Ex. J at 10.  The documentation further notes that it "prompts the user in Plaid Link to fill in the [one time password] and waits for them to fill it in."  *See id.*<br><br>Thus, Plaid infringes limitation [1f]. |
|---|---|
| [1g] transmitting the account holder's response to the online account to satisfy the multi-factor authentication request. | The Accused Products transmit the account holder's response to the online account to satisfy the multi-factor authentication request. For example, Plaid documentation notes that it "[s]ends the [one time password] the user entered for validation using the POST /users/{user_id}/2fa request."  *Id.*<br><br>Thus, Plaid infringes limitation [1g]. |

| Claim 2 | |
|---|---|
| **'090 Patent** | **Accused Products** |
| [2pre] The method of claim 1, further comprising the steps of: | *See supra* claim 1. |
| [2a] storing one or more of the account holder's endpoints for the online account in a data store associated with the online account; and | The Accused Products store one or more of the account holder's endpoints for the online account (*e.g.*, a phone number) in a data store associated with the online account.<br><br>For example, Plaid asks users to enter their phone numbers to "see if [they] connected any financial accounts to apps using Plaid." |





**Exhibit M** at 1, available at https://my.plaid.com/sign-up/get-started (last accessed June 16, 2025).

Plaid explains that it saves users' phone numbers when they create Plaid accounts.

# How we use your number

Many financial institutions and apps use your mobile phone number to help verify your identity. We may be able to use your phone number to determine whether you've connected any of your financial accounts to apps using Plaid. Your phone number will be saved only if you create an account.

**Exhibit N** at 1, available at https://my.plaid.com/sign-up/get-started after clicking "How we use your number" (last accessed June 16,

| | |
|---|---|
| | 2025). |
| | Thus, Plaid infringes limitation [2a]. |
| [2b] utilizing said one or more endpoints to permit the third-party to gain access to the online account, or information pertaining to the online account, without requiring a response by the account holder to any subsequent multi-factor authentication requests. | The Accused Products utilize one or more endpoints to permit the third-party to gain access to the online account, or information pertaining to the online account, without requiring a response by the account holder to any subsequent multi-factor authentication requests.<br><br>For example, after authenticating an account, Plaid permits users to enter their phone number to request data collected from the user's financial institutions.<br><br>1  To link a financial account, first verify your ownership of the account by using your username and password. We will provide upfront clear information on the financial accounts being shared, so you can make the right choice for you.<br><br>2  Once ownership of your accounts is verified, we securely retrieve your permissioned account information from your financial institution.<br><br>3  We collect the data to power the services you've chosen and, when requested, securely share it with the app you're using and establish a secure connection that you control.<br><br>Ex. L at 1; *see also* Ex. M (prompting the user to enter a phone number to see account information).  This data includes information pertaining to the online account, like account transactions, contact information, and, on information and belief, the account value. |



*See* **Exhibit O** at 2, available at https://my.plaid.com/ (last accessed June 16, 2025); *see also* Accounts, Plaid, available at https://plaid.com/docs/api/accounts/ (last accessed June 16, 2025) (explaining how to get "realtime balance information" of a user's accounts).

Thus, Plaid infringes limitation [2b].

22.    Plaid has also indirectly infringed and continues to indirectly infringe one or more of the claims of the '090 patent, including at least claims 1 and 2, under 35 U.S.C. § 271(b) and/or § 271(c), by actively inducing users of the Accused Products to directly infringe the claims and/or contributing to its users' infringement.  On information and belief, users of the Accused Products directly infringe one or more claims of the '090 patent, as set forth in the exemplary claim chart above;  Plaid knows of the '090 patent, knows that its actions constitute infringement, and knowingly induces users of the Accused Products to infringe the '090 patent, at least as of the filing of this complaint; the Accused Products have no substantial non-infringing uses; and Plaid specifically intends to encourage users of the Accused Product to infringe the '090 patent.  For example, Plaid advertises and instructs how to engage in an infringing use of the Accused Products through product documentation and literature.  *See generally e.g.*, Ex. J (documenting how to use Auth to permit access to a user's financial account that is protected by multi-factor authentication).

Plaid also specifically advertises that "Plaid Link handles all aspects of the login and authentication experience, including credential validation, multi-factor authentication, error handling, and sending account linking confirmation emails." Ex. H at 1. At a minimum, Plaid supplied and continues to supply the Accused Products to customers while knowing that its customers' use of the Accused Products infringes one or more claims of the '090 patent and that Plaid's customers then directly infringe one or more claims of the '090 patent by installing and/or using the Accused Products according to Plaid's product documentation and literature.

23.    Plaid's infringement of the '090 patent is and has been willful and egregious because Plaid has actual knowledge of the '090 patent, at least as of the filing of this complaint; engages in the aforementioned activity despite an objectively high likelihood that Plaid's actions constitute infringement of the '090 patent; and knows or should have known about the risk of infringement.

24.    Additional allegations regarding Plaid's pre-suit knowledge of the '090 patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

25.    Secure Authentication Technologies is entitled to recover from Plaid all damages that Secure Authentication Technologies has sustained as a result of Plaid's infringement of the '090 patent, including, without limitation, a reasonable royalty and lost profits.

26.    Plaid's infringement of the '090 patent has been and continues to be willful and deliberate, entitling Secure Authentication Technologies to enhanced damages.

27.    Plaid's infringement of the '090 patent is exceptional and entitles Secure Authentication Technologies to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Secure Authentication Technologies requests entry of judgment in its favor and against Plaid as follows:

(a) declaring that Plaid has infringed and continues to infringe U.S. Patent No. 11,315,090, directly and/or indirectly, literally and/or under the doctrine of equivalents;

(b) declaring that Plaid's infringement of the '090 patent has been willful and deliberate;

(c) awarding all damages sustained by Secure Authentication Technologies as a result of Plaid's acts of infringement in an amount no less than a reasonable royalty for Plaid's infringement of the '090 patent, together with pre-judgment and post-judgment interest and without limitation under 35 U.S.C. § 287;

(d) enhancing damages pursuant to 35 U.S.C. § 284;

(e) declaring that royalties shall be payable on each and every future sale by Plaid of a product that is found to infringe the '090 patent and on all future products that are not colorably different from products found to infringe;

(f) awarding attorney's fees under 35 U.S.C. § 285 or otherwise permitted by law; and

(g) awarding such other costs and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b) and 39(a), Secure Authentication Technologies demands a jury trial on issue so triable.


Dated: June 26, 2025

By:   */s/ Stephen Q. Wood*
Stephen Q. Wood (Utah Bar No. 12403)
stephenwood@quinnemanuel.com
2755 East Cottonwood Parkway, Suite 520
Salt Lake City, Utah 84121
Tel:    (801) 515-7300
Fax:    (801) 515-7400

Todd M. Briggs (*pro hac vice* forthcoming)
toddbriggs@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Tel:    (650) 801-5000
Fax:    (650) 801-5100

Jonathan E. Pickhardt (*pro hac vice* forthcoming)
jonpickhardt@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
Tel:    (212) 849-7000
Fax:    (212) 849-7100

Christopher R. Sabbagh (*pro hac vice* forthcoming)
chrissabbagh@quinnemaneul.com
Quinn Emanuel Urquhart & Sullivan, LLP
700 Louisiana Street, Suite 3900
Houston, Texas 77002
Tel:    (713) 221-7000
Fax:    (713) 221-7200

*Attorneys for Plaintiff Secure Authentication Technologies LLC*